JAMES M. BRIDGES

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Criminal Law—Act Concerning Propagation and Cultivation of Fishes —Use of Seine.*

A pond that is private property is not included within the terms of the statute prohibiting the catching of fish with seines or similar devices in " water-courses wholly within or running through the State of Illinois."

[Opinion filed June 12, 1891.]

Appeal from the Circuit Court of Sangamon County; the Hon. J. A. Creighton, Judge, presiding.

Messrs. Palmer & Shutt, for appellant.

Messrs. John C. Mathis, E. S. Smith and A. J. Lester, for appellee.

Conger, P. J. This was a prosecution against appellant to recover the penalty imposed by the act entitled : " An act to encourage the propagation and cultivation, and to secure the protection of fishes in the waters of this State," as amended by act of June 3, 1889, Session Laws of 1889, page 159. The sixth section of said act is as follows :

" That it shall be unlawful for any person to catch or kill any fish with any seine or any other device used as a seine, in or upon any of the rivers, creeks, streams, ponds, lakes, sloughs, bayous or other water-courses wholly within or running through the State of Illinois. * * * Any person so offending shall be deemed guilty of a misdemeanor, and fined as provided in this act." The case was commenced before a justice and appealed to the Circuit Court, where it was tried by the court without a jury upon the following agreed state of facts.

Jacob Miller is the owner of the northwest quarter of section eight in township fifteen north, range three, west of the third principal meridian, in Sangamon county, Illinois, in which what is known as Sand Prairie Lake is situate.

The small body of water known as Sand Prairie Lake is about one-quarter of a mile in length, and its width ranges from about twenty-five yards to one hundred yards.

It is situate in the bottom of the north fork of the Sangamon river and is distant from said river only a few yards at the farthest point. There is a low place or depression in said northwest quarter of section eight, reaching from the north end of said lake or pond, to the bed of said river, at most

seasons of the year; but in case of high water this depression or slough fills with water and connects directly the waters of this pond or lake with the waters of said stream or river, and at times this connection lasts for a period of several days or weeks. The rises in the said river or stream generally occur in the spring of the year or the early summer, and again in the fall. When there is no high water in the said river or stream, the said lake or pond is entirely shut in, and its waters do not mingle at all with the waters of said stream.

In July of 1889 the defendant, James Bridges, obtained the consent of said Jacob Miller to fish with a seine in said body of water, so situate on his premises, and to catch and kill fish in said pond with a seine.

After consent was given defendant by Jacob Miller so to do, the defendant with the help of others went in and upon said pond, and with a large seine, with meshes of one and one-half inches and about seventy-five yards long—not a minnow seine—dragged said pond or body of water, and caught and killed thereby a large number of fish of different kinds, of the varieties common to the waters within the State of Illinois.

The north fork of the Sangamon river is not a stream or river used for navigation, nor is the said pond navigable or used for navigation. Upon the foregoing facts the court fined appellant $10 and costs, and he appeals.

" By the common law a right to take fish belongs so essentially to the right of soil in streams or bodies of water, where the tide does not ebb and flow, that if the riparian proprietor owns upon both sides of the stream, no one but himself may come upon the limits of his land and take fish there; and the same rule applies so far as his land extends, to wit, to the thread of the stream, where he owns upon one side only. Within these limits, by the common law, his right of fishing is sole and exclusive, unless restricted by some local law or well established usage of the State where the premises may be situate." Beckman et al. v. Kreamer et al., 43 Ill. 447, and authorities there cited.

Without questioning the power of the Legislature to

regulate the manner of taking fish in all public waters of the State, and without noticing the further question of how far such regulation could lawfully extend to private or individual waters, the only question we are required to decide in the present case is, does a proper interpretation of the law of 1889 above quoted include within its terms the pond in question, under the facts as they are stated in the agreement. We are clearly of the opinion that it does not.

It is insisted by counsel for appellant that the words "or other water-courses," limit the meaning of the preceding words, so that no pond, lake, slough or bayou would be within the act, unless such places came within the definition of water courses, that is, a stream usually flowing in a particular direction in a definite channel having a bed, sides or banks, etc. We are not prepared to assent to this proposition.

We think there might be bodies of water denominated as ponds, lakes, sloughs or bayous of such magnitude, and with such connection with the rivers or streams of the State as to come within the provisions of the law. The rule for determining this question would seem to be: Is the body of water private property; has the owner of the soil on which it is situate, the lawful right to alter, change or destroy it by drainage, filling it up, or by any other means that might suit his interest or pleasure, without regarding the wishes or interests of the general public or third persons? If so, then it is private property and is not included within the spirit and meaning of the law.

No one can exercise such control over the smallest creek or rivulet in the State. He must not permanently change its course, or injure its waters, but must allow them to flow through his premises for the benefit of others.

There might also be ponds, lakes, sloughs or bayous so situated as to become a part of the public waters of the State, so that the owners of the soil beneath them could not lawfully interfere with their use by the public, and in such cases, we think, the statute would apply.

Counsel for appellees in their brief, say: "We do not dis-

pute Miller's right to prevent the entrance or escape of fish into or from this lake at pleasure. We do not deny that he might fill the lake if he chose, and in that way destroy the fish."

No one, we presume, would deny this right to Miller, under the facts as stated, and the conclusion to our minds follows, that he could have no such right in any water wherein the public have rights, or over which they propose to exercise jurisdiction or control in the manner of taking fish.

The judgment of the Circuit Court will be reversed.

*Judgment reversed.*